IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

JOHN T.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 4:17-cv-04106-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 26) and the Defendant's Motion for Summary Affirmance (Doc. 29). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

In December 2012, John T. filed an application for Retirement Insurance Benefits. That same month, the Social Security Administration (SSA) informed him that his application for retirement benefits was approved and his entitlement date was January 2013. SSA further informed him, however, that it could not pay him those benefits because:

> You were convicted of a crime and confined in a jail or prison; The crime included sexual activity, and when you completed the sentence,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 16, 20) on the docket.

>you were immediately sent by court order to an institution at public expense. The court decided you were a sexually dangerous person.

AR 24. John filed a request for reconsideration of that determination in February 2013. An administrative hearing was held in April 2015, and in an April 24, 2015 decision, the Honorable Carol L. Boorady (ALJ) determined John's retirement benefits were correctly suspended beginning in January 2013. John, proceeding *pro se*, sought review of that decision in this Court on April 27, 2017. On September 7, 2017, the Court entered an Order granting the Commissioner's motion to remand this case pursuant to the sixth sentence of 42 U.S.C. § 405(g) so that the Commissioner: could obtain from John missing copies of the recording of his April 2015 administrative hearing and some documents related to the ALJ's decision; or, if necessary, remand the case to an ALJ for reconstruction of the administrative record and to hold another hearing and issue a new decision.

The Appeals Council thereafter vacated the previous decision and remanded the case to the same ALJ for a *de novo* hearing, any further action needed to complete the record, and a new decision. A telephonic administrative hearing was held on November 28, 2018 at which time John was informed of his right to representation but chose to appear and testify without an attorney or other representative. On January 15, 2019, the ALJ once again issued an unfavorable Decision that John's benefits were correctly suspended beginning in January 2013. The Appeals Council declined to assume jurisdiction over John's exceptions to the ALJ's January 2019 Decision. Upon the Commissioner's Motion to Reopen this case in August 2019, the Court found the motion moot as the case remained open during the sentence six remand and ordered this case continue given that the administrative proceedings had concluded. The Commissioner subsequently filed its Answer and a supplemental transcript, and the parties filed their respective briefs.

## II

42 U.S.C. § 402(x)(1)(A) provides for "limitations on payments to prisoners, certain other inmates of publicly funded institutions, fugitives, probationers, and parolees." The Ticket to Work and Work Incentives Improvement Act of 1999 (Ticket to Work Act) amended Section 402(x)(1)(A) to provide that monthly benefits would be suspended for any month where the individual was convicted of a criminal offense and confined for more than 30 days in a jail, prison, or other penal institution or correctional facility pursuant to that conviction of a criminal offense. Pub. L. No. 106-170, 113 Stat. 1860 (codified as amended at 42 U.S.C. § 402(x)(1)(A)(i)). The Ticket to Work Act further amended Section 402(x)(1)(A) by adding clause (iii):

> Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual--
> (iii) immediately upon completion of confinement as described in clause (i) pursuant to conviction of a criminal offense an element of which is sexual activity, is confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding[.]

Pub. L. No. 106-170, 113 Stat. 1860 (codified as amended at 42 U.S.C. § 402(x)(1)(A)(iii)). The Ticket to Work Act further provides that Section 402(x)(1)(A)(iii) applied "with respect to benefits for months ending *after* the date of the enactment of this Act" which was December 17, 1999. Pub. L. No. 106-170, 113 Stat. 1860 (emphasis added).

At the November 2018 hearing, John argued: the determination to suspend his Social Security retirement benefits was an equal protection violation because there were other people in the Department of Human Services that continued to

get their Social Security payments even though those people were in facilities paid for by taxpayers; his prison sentence ended before the revised law went into effect; and to deny him Social Security payments was continued punishment.

In her January 2019 Decision, the ALJ found: 1) John was convicted of a crime with a sexual element and incarcerated from October 1997 through May 1999; 2) John was confined by court order in an institution at public expense upon completion of his incarceration, because he was determined to be a sexually dangerous person; 3) John was confined more than 30 days before benefits were suspended (there was no evidence there were any breaks in his confinement during the relevant period); and 4) John's benefits were correctly suspended based on the determination that he was confined as a sexually violent person. Accordingly, the ALJ determined that John's benefits were correctly suspended beginning in January 2013.

### III

John argues that the suspension of his Social Security retirement benefits is unconstitutional because: 1) the application of 42 U.S.C. § 402(x)(1)(A)(iii) to his circumstances is an improper retroactive application of the law given that he "already pre-paid for retirement before the change to [Section 402(x)];" and 2) Section 402(x) violates his equal protection rights. The Commissioner counters that the ALJ reasonably applied Section 402(x) to conclude that payment of John's monthly Social Security retirement benefits should be suspended because he was confined to a psychiatric institution immediately following his release from prison due to a sexual offense. As the Commissioner points out in his brief, John does not dispute that he met all three requirements for the suspension of his retirement benefits under Section 402(x)(1)(A)(iii).

In *Flemming v. Nestor*, the U.S. Supreme Court determined that Social Security benefits were not an "accrued property right." 363 U.S. 603, 608 (1960).

4

The plaintiff in that case argued, among other things, that the termination of his Social Security benefits pursuant to benefit-termination deportation grounds specified in a previous version of the Social Security Act amounted to punishment. *Id.* at 613. The Supreme Court explained, "Essential to the success of [this contention] is the validity of characterizing as 'punishment' in the constitutional sense the termination of benefits under [the contested provision of the Social Security Act]." *Id.* The Supreme Court determined "the sanction is the mere denial of a noncontractual governmental benefit" and not punishment. *Id.* at 617. It explained, "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program . . . we must recognized that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Id.* at 611.

Previous versions of Section 402(x) have withstood constitutional challenges several times under the authority of *Flemming*. The Second Circuit Court of Appeals rejected an incarcerated felon's constitutional challenge to the suspension of his retirement benefits because the applicable version of Section 402(x) "rationally reflect[ed] the policy that prisoners' Social Security retirement benefits be suspended since their substantial economic needs are already met." *Zipkin v. Heckler*, 790 F.2d 16, 19 (2d Cir. 1986) ("[P]risoners, as a group, do not have the need for a continuing source of income that nonprisoners typically may have"). The Ninth Circuit rejected an inmate's argument that his suspension of retirement benefits was an equal protection and due process violation where Section 402(x) lacked a rational justification and treated incarcerated prisoners differently than other persons receiving public assistance. *Butler v. Apfel*, 144 F.3d 622 (9th Cir. 1998). The Ninth Circuit reasoned, there was nothing irrational about Congress' stated goal of conserving social security resources, and, "In conserving resources, Congress could legitimately choose to save on prisoners versus other wards of the

state," and "any number of rationales could be put forth" such that the court did not find Congress' actions arbitrary. *Id*. at 625. The D.C. Circuit rejected an incarcerated felon's contention that the suspension of his retirement benefits he began receiving in 1980 by operation of an amendment to the Social Security Act in 1983 was ex post facto. *Wiley v. Bowen*, 824 F.2d 1120, 1121 (D.C. Cir. 1987). The D.C. Circuit explained that "enough doubt remains about the purpose of the statute that we cannot declare it unconstitutional" as punitive. *Id*. at 1122. As the Commissioner cites in his Motion for Summary Affirmance, the Fourth, Sixth, Eighth, Tenth, and Eleventh Circuit Courts have similarly rejected constitutional challenges to Section 402(x).

In this circuit, the two named plaintiffs who were confined in an Illinois state mental hospital following acquittals for murder by reason of their insanity challenged the suspension of their disability benefits as the denial of the equal protection of the laws and thus a violation of the Fifth Amendment's due process clause. *Milner v. Apfel*, 148 F.3d 812, 813 (7th Cir. 1998). The Seventh Circuit ruled against the plaintiffs; "If the test is whether the difference in treatment is rational, the claim clearly fails." *Id*.

While neither the Seventh Circuit nor any Circuit Court has specifically addressed the constitutionality of Section 402(x)(1)(A)(iii), one district court in Massachusetts rejected an indefinitely civilly committed sexually dangerous person's challenge that Section 402(x)(1)(A)(iii) was improperly applied to him retroactively and that such retroactive application was unconstitutional. *Dawley v. Barnhart*, No. 05-11440, 2006 WL 2085976, at *2 (D. Mass. July 26, 2006). The plaintiff was convicted of two counts of assault with intent to rape and two counts of indecent assault and battery for which he was sentenced in 1983 to two concurrent five to ten year terms of imprisonment, he was then civilly committed as a sexually dangerous person effective January 4, 1985, and he began receiving

6

Social Security disability benefits in 1987. *Id*. at 1. Those benefits were suspended in 2000 pursuant to the Ticket to Work Act, specifically Section 402(x)(1)(A)(iii). *Id*. The Massachusetts district court rejected the plaintiff's argument that the statute was retroactively applied to him as the statute clearly provided it "shall apply with respect to benefits for months ending after the date of the enactment," and his benefits were prospectively suspended after the prescribed effective date of Section 402(x)(1)(A)(iii). *Id*. at 2 (citing Pub. L. No. 106-170, 113 Stat. 1860). The *Dawley* court also rejected the plaintiff's argument that the suspension of his existing entitlement to benefits amounted to ex post facto suspension of his benefits. *Id*. The *Dawley* court cited the Supreme Court's *Flemming* analysis and noted that "all the courts of appeal to consider the constitutionality of the suspension of benefits to confined or committed persons pursuant to 42 U.S.C. § 402(x) have upheld the provision's validity according to the *Flemming* analysis." *Id*. The *Dawley* court explained:

> Like other provisions of the Act, 42 U.S.C. § 402(x)(1)(A)(iii) was intended to limit the drain on scarce Social Security resources by persons whose basic needs are already being provided for by the State. *See Davis*, 825 F.2d at 801; *Artz v. Barnhart*, 214 F.Supp.2d 459, 466 (D.N.J. 2002) *aff'd*, 330 F.3d 170 (3d Cir. 2003). Without some evidence of an intent to punish recipients, the simple cessation of benefits to those whose circumstances make the subsistence payments unnecessary does not violate the Ex Post Facto Clause. *See* 42 U.S.C. § 402(x)(1)(A)(iii); *Flemming*, 363 U.S. at 618–19.

*Id*.

In light of the foregoing, ample authority, the Court rejects John's constitutional challenges to Section 402(x)(1)(A)(iii). While his "retroactive impact" argument has taken somewhat different forms in the record, it ultimately fails. First, the Supreme Court's determination in *Flemming* that Social Security benefits were not an "accrued property right" and were described as a

7

"noncontractual government benefit" does away with John's argument that he "pre-paid" his retirement benefits and thus they were unconstitutionally denied to him after the fact. Second, as the ALJ explained in her Decision, the statute is not applied retroactively in that it does not refer to when the initial crime for which John was incarcerated was committed. It is of no moment that he was not an inmate pursuant to a criminal sentence at the time the Ticket to Work Act was passed because Congress explicitly provided that Section 402(x)(1)(A)(iii), the provision pursuant to which John's benefits were *suspended beginning in January 2013*, was to apply to any benefit payments for the *months following its effective date*" (December 17, 1999). Pub. L. No. 106-170, 113 Stat. 1860 (emphasis added).

John's equal protection argument fails as well. He argues that if he were in a veteran's home he would continue to receive his Social Security retirement benefits, and he asserts that "many persons who are civilly committed within the United States receive Social Security Benefits." Plf's MSJ (Doc. 26 at pg. 7). The Seventh Circuit's reasoning in *Milner* guides this Court's analysis. The *Milner* court noted that Congress created an "anomaly" in a previous version of Section 402(x) – the differential treatment of the civilly and the criminally committed:

> But this sort of thing is inevitable whenever Congress moves step by step to correct some inequity, in this case the payment of benefits to people who don't need them because they are being maintained at the expense of the taxpayer, who is also the source of the benefits and doesn't want to pay twice over. Legislatures are permitted to correct a problem incrementally even though by doing so they create arbitrary distinctions until correction is complete.

*Milner*, 148 F.3d at 814 (citing a handful of Supreme Court cases); *see also Butler* 144 F.3d at 625 (similarly citing *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955), for its holding that the legislature can selectively reform without violating the Equal Protection Clause). Once again, the ultimate inquiry for this Court is

whether Section 402(x)(1)(A)(iii) has a rational basis. *Milner*, 148 F.3d at 815-816. As the provision states explicitly, no monthly benefits shall be paid to an individual during the time that individual "is confined by court order in an institution at public expense[.]" The decision to preclude the payment of Social Security retirement benefits to a person whose basic needs are already provided for at no expense to himself is unquestionably rational. That determination does away with John's contention that the suspension of his retirement benefits amounts to punishment. *See Flemming*, 363 U.S. at 611.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 26) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 29) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, deciding Plaintiff John T.'s benefits were correctly suspended beginning in January 2013 is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on June 3, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE