UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHN T., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-04106-SLD-JEH |
| ) | |
| ANDREW SAUL, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are Plaintiff John T.'s motion for summary judgment, ECF No. 26; Defendant Commissioner of the Social Security Administration's ("the Commissioner") Motion for Summary Affirmance, ECF No. 29; United States Magistrate Judge Jonathan E. Hawley's Report and Recommendation ("R&R"), ECF No. 30, recommending denying John's motion and granting the Commissioner's; John's objection to the R&R, ECF No. 37; and the Commissioner's response thereto, ECF No. 38. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, John's motion is DENIED, and the Commissioner's motion is GRANTED.

BACKGROUND

John filed an application for retirement insurance benefits in December 2012. *See* R. 31–32.[1] The Social Security Administration ("SSA") informed him that he was approved for benefits as of January 2013, but that it could not pay him the benefits because he was convicted of a crime that had as an element sexual activity, completed a jail or prison sentence for that

---

[1] Most of the administrative record can be found at ECF No. 16. Citations to this part of the record take the form: R. __, using the CM/ECF-generated page numbers. A supplemental record was filed containing a few missing pages and can be located at ECF No. 20. The Court finds it unnecessary to cite those pages.

crime, and was thereafter immediately confined in an institution at public expense pursuant to a court finding that he was a sexually dangerous person. *See id.* at 37–40. John requested reconsideration of the decision to suspend payment of his benefits, *id.* at 41, but the SSA affirmed its decision, relying on 42 U.S.C. § 402(x)(1)(A)(iii), R. 44–46. Section 402(x)(1)(A)(iii) of the Social Security Act provides:

> [N]o monthly benefits shall be paid under this section . . . to any individual for any month . . . during a period of more than 30 days throughout all of which such individual immediately upon completion of confinement [in a correctional facility] . . . pursuant to conviction of a criminal offense an element of which is sexual activity, is confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding . . . .

John requested a hearing before an administrative law judge ("ALJ"). R. 47. A hearing was held in April 2015, and after the hearing ALJ Carol Boorady upheld the suspension of John's benefits, finding that John's benefits were properly withheld under § 402(x)(1)(A)(iii) because all the requirements were met. *Id.* at 68–71.

John filed suit in this Court on April 27, 2017. Compl., ECF No. 1. The Court remanded the case to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) because the administrative record was incomplete. *See* Sept. 7, 2017 Order, ECF No. 10. On remand, a new hearing was held. *See* R. 109–30. On January 15, 2019, ALJ Boorady issued a second decision upholding the SSA's decision to suspend John's benefits beginning in January 2013. *Id.* at 10–13. The Appeals Council declined to reconsider the ALJ's decision, *id.* at 2–3, so the ALJ's second decision is the final decision of the Commissioner, *see Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

When the administrative proceedings concluded, the case returned to this Court. *See* Aug. 22, 2019 Text Order. John filed a motion for summary judgment, arguing that denial of his

retirement benefits constitutes an impermissible retroactive application of the law and violates his equal protection rights. Mot. Summ. J. 1. He also appears to argue that denial of benefits constitutes an impermissible punishment for civilly committed persons, though it is somewhat unclear how this relates to his other arguments. *See id.* at 4. The Commissioner argues suspending John's benefits was permissible under § 402(x)(1)(A)(iii) and that § 402(x)(1)(A)(iii) is constitutional. Mem. Supp. Mot. Summ. Affirmance 1, ECF No. 29-1. Judge Hawley recommends rejecting John's arguments and affirming the Commissioner's suspension of John's retirement benefits. R&R 4–9.

John objects to the R&R. Objection 1.[2] He reiterates the arguments set forth in his summary judgment motion. *Id.* at 1–4. The Commissioner argues that John shows no error on the part of Judge Hawley or the ALJ. Resp. Objection 1.

## DISCUSSION

### I.     Legal Standard

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers de novo the portions of the recommended disposition that were properly objected to and may accept, reject, or modify the recommended disposition or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial

---

[2] Initially, the Court adopted the R&R because it received no timely objection. *See* June 26, 2020 Order, ECF No. 31. John moved to set aside the Court's judgment, arguing that he did not receive a copy of the R&R and therefore had no opportunity to object. Mot. Set Aside Judgment 1, ECF No. 33. The Court granted John's motion and reopened the case. Aug. 4, 2020 Text Order. John then filed what appeared to be an incomplete version of his objection. *See* Sept. 22, 2020 Objection, ECF No. 35. The Court granted John leave to refile if there was a scanning error. Oct. 13, 2020 Text Order. John filed a complete version of his objection on October 15, 2020. The Court considers only that version of the objection.

objection, is made, the district judge reviews the unobjected portions of the recommendation for clear error.  *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## II.   Analysis

The facts are not at issue in this case.  John does not dispute that he was convicted of an offense that has as an element sexual activity, R. 17, or that since 1999 he has been continuously confined by court order at public expense pursuant to a finding that he is a sexually violent person, *see id.* at 21 (noting that John was eligible for release from prison in May 1999, but prior to his release, the state petitioned to have him committed as a sexually violent person).  Instead, he challenges the legality of § 402(x)(1)(A)(iii),[3] which prohibits payment of his retirement benefits to him while he is so confined.  The Court construes his filings liberally in light of his pro se status and considers his arguments de novo.

### a.  History of Law

Until December 16, 1999, § 402(x)(1)(A) provided that no monthly payments would be made to individuals confined in correctional facilities pursuant to convictions of criminal offenses punishable by more than one year of imprisonment or to individuals confined by court order in an institution at public expense based on a finding that the individual was guilty but insane, not guilty by reason of insanity, incompetent to stand trial, or a similar finding.  Social Security Domestic Employment Reform Act of 1994, Pub. L. No. 103-387, § 4, 108 Stat. 4071, 4076.  On December 17, 1999, the law was amended to suspend payments for individuals who were confined in correctional facilities for more than thirty days pursuant to criminal convictions (leaving out the requirement that the offense be punishable by more than one year of

---

[3] To the extent John argues the statute does not apply to him, *see* Mot. Summ. J. 2 ("Plaintiff does not fit within applicable citings."), that argument is underdeveloped and denied.  He clearly meets the requirements set forth in the current version of the statute under the undisputed facts.  *See* 42 U.S.C. § 402(x)(1)(A)(iii).

imprisonment). *See* Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 106-170, § 402(b)(1), 113 Stat. 1860, 1908 ("Ticket to Work Act"). The provision at issue in this case—§ 402(x)(1)(A)(iii), suspending payments to individuals confined in an institution at a public expense for more than thirty days pursuant to a finding that the individual is a sexually dangerous person or a similar finding—was also added. *See* Ticket to Work Act § 402(d)(1), 113 Stat. at 1909. The Ticket to Work Act provided that this provision would "apply with respect to benefits for months ending after the date of the enactment of th[e] Act." Ticket to Work Act § 402(d)(3), 113 Stat. at 1909.

### b. Retroactive Application and Punishment

John argues that because he paid into the Social Security system before § 402(x)(1)(A)(iii) was added, applying the law to him constitutes an impermissible retroactive application of the law. *E.g.*, Objection 1. His briefing does not make the basis of his claim entirely clear, but he repeatedly cites to *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). In *Landgraf*, the Supreme Court considered whether certain amendments to Title VII of the Civil Rights Act of 1964 applied to cases that were pending when the amendments were enacted. *See id.* at 247, 250. Congress had not provided a clear indication of whether the Title VII amendments were to apply to cases pending when it was enacted (and thus to conduct that occurred prior to enactment or, in other words, retroactively). *Id.* at 257–63. The Court, therefore, had to rely on canons of statutory interpretation to determine whether the amendments applied. *Id.* at 263.

The Court considered whether two canons were in conflict. *Id.* at 264. One was "the axiom that [r]etroactivity is not favored in the law, and its interpretative corollary that congressional enactments and administrative rules will not be construed to have retroactive effect

unless their language requires this result." *Id.* (alteration in original) (quotation marks omitted). The other was that courts should apply the law in effect at the time of a decision. *Id.*

The Supreme Court noted that "the antiretroactivity principle finds expression in several provisions of [the] Constitution," *id.* at 266, pointing to the Ex Post Facto clauses,[4] U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1; the clause prohibiting states from impairing contractual obligations, *id.* art. I, § 10, cl. 1; the Takings Clause, *id.* amend. V; the prohibitions on bills of attainder,[5] *id.* art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1; and the Due Process Clauses, *id.* amend. V; *id.* amend. XIV, § 1. It noted, however, that "[a]bsent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf*, 511 U.S. at 267.

John relies on the part of *Landgraf* in which the Court directed lower courts how to proceed "[w]hen a case implicates a federal statute enacted after the events in suit." *Id.* at 280. It wrote that "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach" because if it has, "there is no need to resort to judicial default rules." *Id.* If there is "no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* "If the statute would operate retroactively, . . . [the] presumption [against retroactivity] teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

---

[4] "An ex post facto law is the imposition of what can fairly be designated punishment for past acts." *De Veau v. Braisted*, 363 U.S. 144, 160 (1960).
[5] "[A] bill of attainder involves a statute imposing punishment without the benefit of trial." *Butler v. Apfel*, 144 F.3d 622, 626 (9th Cir. 1998).

The Court fails to see how *Landgraf* helps John. *Landgraf* concerns statutory interpretation. John does not appear to argue the Court should interpret the statute to apply only to individuals who did not begin to pay into Social Security until after December 1999, when § 402(x)(1)(A)(iii) was added to the statute; instead, he purports to raise a constitutional argument. *See* Mot. Summ. J. 1. In any case, § 402(x)(1)(A)(iii) does not have retroactive effect. The Ticket to Work Act provides for prospective application of § 402(x)(1)(A)(iii)—it applies to benefits to be paid out after the date of the Act's enactment. John is suggesting that the relevant event is his payment of Social Security taxes, which occurred prior to December 1999. *See, e.g.*, Objection 3 ("I paid for my retirement in advance to Social Security Insurance Benefit Program . . . . Now I feel like Social Security is playing the game of bate [sic] and switch . . . ."). But the relevant event the law regulates is the payment of benefits. John became eligible for benefits and his benefits were suspended in 2013, long after the statute was amended. *See Dawley v. Barnhart*, No. 05–11440–GAO, 2006 WL 2085976, at *2 (D. Mass. July 26, 2006) (holding that the benefits of a plaintiff who was civilly committed pursuant to a finding that he was a sexually dangerous person were "prospectively suspended after the prescribed effective date of" § 402(x)(1)(A)(iii)'s enactment).

Relatedly, though John argues he has a contract with the SSA, *see, e.g.*, Objection 1, and that the 1999 amendment impairs the right he already had to receive retirement benefits, *see, e.g.*, Mot. Summ. J. 2–3, the Supreme Court has held that an individual does not have a property right to Social Security benefits. *See Flemming v. Nestor*, 363 U.S. 603, 608 (1960). In *Flemming*, the Court observed that eligibility for Social Security benefits "do[es] not in any true sense depend on contribution to the program through the payment of taxes, but rather on the earnings record of the primary beneficiary." *Id.* at 609. The Social Security system is "a form of social

insurance . . . whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled." *Id.* "But each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation." *Id.* at 609–10. John's argument that he pre-paid for his retirement benefits and has a contract to get back what he previously paid into the system, therefore, has been rejected by the Supreme Court. Indeed, the Supreme Court noted: "It is apparent that the noncontractual interest of an employee covered by the [Social Security] Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Id.* at 610. John's analogy to paying insurance premiums only to be denied coverage for a claim, therefore, is not persuasive. *See* Objection 3.

Moreover, even if the statute does have retroactive effect,[6] *Flemming* addresses John's potential constitutional arguments against it. In that case, an alien who immigrated to the United States from Bulgaria became eligible for old-age benefits under the Social Security Act in November 1955; in July 1956, however, he was deported. *Flemming*, 363 U.S. at 605. His Social Security benefits were terminated under a provision of the Social Security Act terminating benefits payable to aliens deported on certain specified grounds. *Id.* at 604–06 & n.1.[7] The Court denied all of the plaintiff's constitutional arguments: that the denial of benefits violated the Due Process Clause of the Fifth Amendment; that it "amount[ed] to punishing him without a judicial trial"; that it "constitute[d] the imposition of punishment by legislative act, rendering

---

[6] While John focuses on his past payment into the Social Security system, he could also be arguing that § 402(x)(1)(A)(iii) added a new legal disability for his past criminal activity or his confinement as a sexually violent person.
[7] The current version of this provision appears at 42 U.S.C. § 402(n) (effective Nov. 2, 2015), and appears to be largely similar.

8

[the statute] a bill of attainder"; and that "the punishment exacted [wa]s imposed for past conduct not unlawful when engaged in, thereby violating the constitutional prohibition on ex post facto laws." *Id.* at 611–21.

As for the due process argument, the Supreme Court explained that "when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Id.* at 611. But the Court held that the provision terminating benefits for deported aliens could not "be condemned as so lacking in rational justification as to offend due process." *Id.* at 612. It noted that "[t]he fact of a beneficiary's residence abroad . . . can be of obvious relevance to the question of eligibility," noting that one benefit of "the Social Security system is the increased over-all national purchasing power," which "would be lost as to payments made to one residing abroad." *Id.* Moreover, the Court held that it could not "be deemed irrational for Congress to have concluded that the public purse should not be utilized to contribute to the support of those deported on the grounds specified in the statute." *Id.* Importantly, the Court noted that it was "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision, as it [wa]s irrelevant that the section [did] not extend to all to whom the postulated rationale might in logic apply." *Id.*

Likewise, here, the Court cannot find that the decision to suspend payments to individuals confined at public expense because of a court order finding them sexually dangerous is so lacking in rational justification that it violates due process. In a case involving a different provision of the same statute, § 402(x)(1)(A)(ii)(II), which provides for suspension of benefits to individuals confined in an institution at public expense in connection with a finding that the

9

individual is not guilty of a criminal offense by reason of insanity, the Seventh Circuit identified a reason for suspending benefits to those confined to an institution at public expense: the taxpayer is already paying to maintain them in the institution, so Social Security benefits are unnecessary. *Milner v. Apfel*, 148 F.3d 812, 814 (7th Cir. 1998) (noting that Congress was correcting the inequity of "pay[ing] benefits to people who don't need them because they are being maintained at the expense of the taxpayer, who is also the source of the benefits and doesn't want to pay twice over"); *see also id.* at 818 (Ripple, J., concurring) ("[W]e ought to place our affirmance of the district court squarely on the proposition that this restriction of eligibility for benefits is rationally related to the Congressional responsibility to protect the public fisc from unnecessary and imprudent expenditures."). The same rationale applies here. *See* Mem. Supp. Mot. Summ. Affirmance 4 ("Plaintiff's basic needs are being provided by the state . . . ."). Because the Court can conceive of a rationale for denying benefits to individuals like John who are already confined at public expense, the statute does not so utterly lack justification that it violates due process. That Congress did not choose to suspend payments for all individuals confined in public institutions does not diminish this rationale. *See Flemming*, 363 U.S. at 612 (noting that it was "irrelevant that the section [d]oes not extend to all to whom the postulated rationale might in logic apply"); *Milner*, 148 F.3d at 814 ("Legislatures are permitted to correct a problem incrementally even though by doing so they create arbitrary distinctions until correction is complete."); *Butler v. Apfel*, 144 F.3d 622, 625 (9th Cir. 1998) ("There is nothing irrational about Congress's stated goal of conserving social security resources, and Congress can incrementally pursue that goal.").

The plaintiff's other constitutional arguments in *Flemming* rested on the notion that denying the plaintiff Social Security benefits was punishment. The Supreme Court explained

that "only the clearest proof could suffice to establish the unconstitutionality of a statute" on the basis that it is punitive. *Flemming*, 363 U.S. at 617; *see id.* at 619 ("It is impossible to find in this meagre [legislative] history the unmistakable evidence of punitive intent which, under principles already discussed, is required before a Congressional enactment of this kind may be struck down."). And it found that the plaintiff could not establish that the termination of benefits for deported aliens was intended to be punitive. *Id.* at 616–17. First, it noted that the nature of the deprivation was not punitive: "the sanction [wa]s the mere denial of a noncontractual governmental benefit" and that "[n]o affirmative disability or restraint [wa]s imposed." *Id.* at 617. Next, the Court noted again that the legislation was rationally related to a legitimate government purpose, *id.*, and rejected the plaintiff's arguments that the legislative history in fact showed an intent to punish individuals who were deported because of certain activities, *id.* at 617–20.

Here, although John argues that denying him benefits constitutes punishment, *e.g.*, Objection 2, he has not offered unmistakable proof that suspending Social Security payments to individuals confined to institutions pursuant to a finding that they are sexually dangerous was intended to be punitive. Like in *Flemming*, the nature of the deprivation does not suggest punitive intent. The denial is of a noncontractual benefit. And, as explained above, the legislation is rationally related to a legitimate government purpose—preserving resources. John makes no argument that the legislative history shows punitive intent.

John also argues that *Kansas v. Hendricks*, 521 U.S. 346 (1997), prohibits punishing civilly committed individuals. Objection 2. In that case, the Supreme Court considered whether Kansas's law providing for civil commitment of sexually violent predators violated the Constitution's ban on ex post facto laws and double jeopardy prohibition. *See Hendricks*, 521

U.S. at 360–71. It held that being civilly committed for prior conduct did not constitute punishment and therefore did not violate the Ex Post Facto Clauses. *Id.* at 361–69. *Hendricks* does not add anything the Court has not already considered—it merely provides that punishing an individual for an offense already committed violates the Constitution. John refers to Justice Kennedy's concurrence, Mot. Summ. J. 4, which states that "while incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal system alone," *Hendricks*, 521 U.S. at 373 (Kennedy, J., concurring). Perhaps this means that any punishment of those civilly committed because they are so committed is inappropriate regardless of whether the punishment was added after the conduct leading to commitment or the commitment itself occurred. But, again, John has given the Court no reason to find that the deprivation of Social Security benefits to an individual confined in an institution pursuant to a court finding that he is sexually dangerous constitutes punishment.

John's argument that § 402(x)(1)(A)(iii) is an unconstitutional retroactive application of the law or impermissible punishment fails.

    **c. Equal Protection**

John also argues that § 402(x)(1)(A)(iii) violates his equal protection rights because others who are civilly committed and others who are cared for at public expense receive Social Security benefits. *See* Objection 4; Mot. Summ. J. 1, 5–6.

There is an equal protection component of the Due Process Clause of the Fifth Amendment. *See L.D.R. v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019). The analysis of a claim brought under this component is the same as the analysis of claims under the Equal Protection Clause of the Fourteenth Amendment, which applies to states. *Id.* at 1153 n.3 (citing

*Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)). "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Segovia v. United States*, 880 F.3d 384, 390 (7th Cir. 2018) (alteration in original) (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (per curiam)). Intermediate scrutiny applies in cases of gender discrimination. *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014). In other cases, rational basis review applies. *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019).

Though John appears to argue that his claim is subject to strict scrutiny, *see* Objection 4, he provides no case law support. And the Court can find no case law which would suggest that receiving Social Security benefits is a fundamental right or that either individuals who have been convicted of sex crimes or individuals who are civilly committed pursuant to a finding that they are sexually dangerous are suspect classes. *Cf. Milner*, 148 F.3d at 817 (Ripple, J., concurring) ("This is a case about the distribution of Social Security benefits. Here, Congress has decided to draw a line in the distribution of those benefits that implicates neither a fundamental right nor a suspect class."); *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006) ("Rational-basis review applies here—the difference between a person who has been convicted of sex offenses [and is committed pursuant to the Illinois Sexually Violent Persons Act] . . . and one who has not [and is instead committed pursuant to the Illinois Sexually Dangerous Persons Act] . . . affects neither fundamental rights nor suspect classes."). John again points to *Hendricks*, Objection 4, but that case does not stand for the proposition that the class of people civilly committed pursuant to findings that they are sexually dangerous is a suspect class.

Even if John is correct that some civilly committed people and people housed at public expense receive their Social Security benefits, the law suspending payments to those civilly committed pursuant to a finding that they are sexually dangerous must be upheld as long as there is "a 'reasonably conceivable state of facts that could provide a rational basis' for the classification." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  As the Court has already explained, it can conceive of a rational basis for the statute: preserving Social Security resources.  *See supra* Section II(b).  And, again, the fact that Congress did not fully solve the problem of avoiding paying benefits to those who are already maintained at the taxpayer's expense does not change this conclusion.  *Milner*, 148 F.3d at 814; *see also Goodpaster*, 736 F.3d at 1072 ("[L]egislation 'does not violate the Equal Protection Clause merely because the classifications [it makes] are imperfect.'" (second alteration in original) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970))).

John's argument that § 402(x)(1)(A)(iii) violates his equal protection rights fails.

## CONCLUSION

Accordingly, Plaintiff John T.'s objection, ECF No. 37, is OVERRULED, and the Report and Recommendation, ECF No. 30, is ADOPTED.  John's motion for summary judgment, ECF No. 26, is DENIED.  Defendant Commissioner of the Social Security Administration's Motion for Summary Affirmance, ECF No. 29, is GRANTED.  The Commissioner's decision in this matter is AFFIRMED.  The Clerk is directed to enter judgment and close the case.

Entered this 14th day of January, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
